CARUSO, Appellee,

v.

The STATE of Ohio et al., Appellee; Ohio State University
Medical Center, Defendant–Appellant.

[Cite as *Caruso v. State* (2000), 136 Ohio App.3d 616.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–534.

Decided Feb. 17, 2000.

*Stanley B. Dritz,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Larry Y. Chan,* Assistant Attorney General, for appellant.

---

LAZARUS, Judge.

Defendant-appellant, The Ohio State University Medical Center ("OSUMC"), appeals from the judgment of the Ohio Court of Claims that its employee, Dr. Reinhard Gahbauer, was not entitled to civil immunity pursuant to R.C. 9.86. For the reasons that follow, we reverse.

Plaintiff-appellee, Myrna Caruso, worked as an administrative secretary for Gahbauer, Director of the Division of Radiation Oncology, at the James Cancer Hospital. Her job included handling correspondence, supervising secretaries for the division, and performing clerical duties related to the OSUMC's residency and fellowship programs.

During the time Caruso worked for Gahbauer, she had difficulty communicating with him. If she asked him a question, he often seemed annoyed. According to Caruso, there never seemed to be a correct time to ask the doctor a question. While acknowledging that Caruso had excellent secretarial skills, Gahbauer indicated that Caruso failed to understand that he could not deal with a side issue when he was in the middle of a consult. Gahbauer became frustrated with what he perceived as irrelevant interruptions by Caruso.

After many episodes in which Gahbauer became frustrated, Caruso devised a system in which she put written questions in manila folders and submitted them to Gahbauer when he was out of the office. Gahbauer would then respond in like fashion.

On Wednesday June 25, 1997, Gahbauer had been in the office for about one-half hour when Caruso received a telephone inquiry that needed immediate resolution. Caruso asked Gahbauer a question, he answered, and she returned to the telephone to tell the caller that she would call him back. She hung up the phone and went back into Gahbauer's office to inform him of the situation. On her way in, she noticed and picked up a piece of paper that apparently had not gotten in the folder. As Gahbauer responded to her explanation about the telephone call, she put the piece of paper down and said: "You haven't been returning the folders." Gahbauer became angry, slammed his hand on the desk, and said: "I am so angry I want to slap you." Caruso responded: "Oh, I didn't mean anything by that. I'm sorry, you know. Why are you doing this? I'm sorry." Gahbauer then stood up and approached Caruso stating: "Have you ever been so angry that you wanted to slap someone?" Caruso said: "No," and she was crying. Gahbauer then touched her on the arm and moved her back so he could close the door. After closing the door, Gahbauer apologized for losing his

temper. He also told her that she had to understand him, that he was a very busy man, and that she always had a knack for disturbing him.

Caruso went to the restroom to compose herself. She left work at the end of the day and did not return until the following Monday. She subsequently obtained another position with the university.

On June 22, 1998, Caruso filed suit in the Ohio Court of Claims seeking damages for assault, battery, and intentional infliction of emotional distress. On December 21, 1998, a magistrate conducted a hearing to determine the immunity status of Gahbauer. On February 25, 1999, the magistrate issued a decision concluding that Gahbauer was acting outside the scope of his employment and was therefore subject to suit in the court of common pleas. Specifically, the magistrate found that Gahbauer's actions bore no relationship to the conduct of the state's business and the act, if determined to be an assault, was so divergent that its character severed the employer-employee relationship. The magistrate further found that Gahbauer acted outside the scope of his official duties, recklessly and with a malicious purpose.

OSUMC filed objections to the magistrate's decision, and Caruso responded. On April 6, 1999, the trial court adopted the decision of the magistrate finding that Gahbauer's behavior was reckless. OSUMC appealed the judgment of the trial court, assigning as error the following:

"1. The Court of Claims erred as a matter of law in deciding that Ohio State University Medical Center's employee, Dr. Gahbauer, acted outside the scope of his official duties, recklessly and with a malicious purpose.

"2. The Court of Claims [sic] decision that Dr. Gahbauer acted recklessly was against the manifest weight of the evidence and contrary to the relevant case law."

OSUMC's assignments of error are interrelated and will be discussed together. In essence, OSUMC contends that the trial court erred in concluding that Gahbauer was not entitled to immunity. R.C. 2743.02(F) and 9.86 govern a determination as to whether or not a state employee is entitled to personal immunity. R.C. 2743.02(F) provides:

"A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

R.C. 9.86 states:

"[N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

■ The issue of whether Gahbauer is entitled to immunity is a question of law. *Nease v. Med. College Hosp.* (1992), 64 Ohio St.3d 396, 400, 596 N.E.2d 432, 435 citing *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862, 869. However, the question of whether Gahbauer acted within the scope of his employment is a question of fact. See *Lowry v. Ohio State Highway Patrol* (Feb. 27, 1997), Franklin App. No. 96API07–835, unreported, 1997 WL 84656; *Tschantz v. Ferguson* (1989), 49 Ohio App.3d 9, 550 N.E.2d 544.

■ In this regard, matters involving credibility should be resolved by the trial court, and judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence; *Brooks v. Ohio State Univ.* (1996), 111 Ohio App.3d 342, 350, 676 N.E.2d 162, 166–167, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

■ In the context of immunity, an employee's wrongful act, even if it is unnecessary, unjustified, excessive, or improper, does not automatically take such act manifestly outside the scope of employment. *Elliott v. Ohio Dept. of Rehab. & Corr.* (1994), 92 Ohio App.3d 772, 775, 637 N.E.2d 106, 107–108, citing *Thomas v. Ohio Dept. of Rehab. & Corr.* (1988), 48 Ohio App.3d 86, 89, 548 N.E.2d 991, 994; and *Peppers v. Ohio Dept. of Rehab. & Corr.* (1988), 50 Ohio App.3d 87, 90, 553 N.E.2d 1093, 1095–1096; *Brooks, supra,* at 350, 676 N.E.2d at 166–167. It is only where the acts of state employees are motivated by actual malice or other such reasons giving rise to punitive damages that their conduct may be outside the scope of their state employment. *James H. v. Dept. of Mental Health and Mental Retardation* (1980), 1 Ohio App.3d 60, 61, 1 OBR 6, 7–8, 439 N.E.2d 437, 438–439. The act must be so divergent that it severs the employer-employee relationship. *Elliott,* at 775, 637 N.E.2d at 107–108, citing *Thomas,* at 89, 548 N.E.2d at 994, and *Peppers,* at 90, 553 N.E.2d at 1095–1096.

■ Malicious purpose encompasses exercising "malice," which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 453–454, 602 N.E.2d 363, 366–367, citing *Teramano v. Teramano* (1966), 6 Ohio St.2d 117,

118, 35 O.O.2d 144, 144–145, 216 N.E.2d 375, 376–377; and *Bush v. Kelley's Inc.* (1969), 18 Ohio St.2d 89, 47 O.O.2d 238, 247 N.E.2d 745.

"Bad faith" has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another. *Lowry, supra,* quoting Black's Law Dictionary (5 Ed. 1979) 127. Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. *Id.*

■ Finally, "reckless conduct" refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent. *Hackathorn v. Preisse* (1995), 104 Ohio App.3d 768, 771, 663 N.E.2d 384, 386, citing *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705, 707–708, citing 2 Restatement of the Law 2d, Torts (1965) 587, Section 500. The term "reckless" is often used interchangeably with the word "wanton" and has also been held to be a perverse disregard of a known risk. *Jackson,* citing *Thompson,* at 104, 559 N.E.2d at 708, fn. 1, and *Poe v. Hamilton* (1990), 56 Ohio App.3d 137, 138, 565 N.E.2d 887, 888–889. As to all of the above terms, their definitions connote a mental state of greater culpability than simple carelessness or negligence. See *Jackson, supra,* at 454, 602 N.E.2d at 367.

■ In *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 565 N.E.2d 584, the Ohio Supreme Court has pointed out that an employer is liable in tort for the conduct of its employee only if the conduct is committed within the scope of employment and that, if the tort is intentional, the conduct giving rise to the tort must facilitate or promote the business for which the employee was employed or at least be calculated to do so, citing *Little Miami R.R. Co. v. Wetmore* (1869), 19 Ohio St. 110, 1869 WL 35, and *Taylor v. Doctors Hospital* (1985), 21 Ohio App.3d 154, 21 OBR 165, 486 N.E.2d 1249. As pointed out in *Vrabel v. Acri* (1952), 156 Ohio St. 467, 46 O.O. 387, 103 N.E.2d 564, an intentional and willful tort committed by an employee for his own personal purposes constitutes a departure from his employment, so that the employer is not responsible. The fact that the conduct constituting the tort was committed while the employee was on duty and supposedly performing services for his employer, does not render the employer liable where the employee deviated or departed from his employer's business to engage upon a matter for his own personal purposes without benefit to the employer. *Szydlowski v. Ohio Dept. of Rehab. & Corr.* (1992), 79 Ohio App.3d 303, 305, 607 N.E.2d 103, 104–105. See, also, *Schulman v. Cleveland* (1972), 30 Ohio St.2d 196, 283 N.E.2d 175.

Here, the issue of whether Gahbauer was entitled to immunity requires an examination of the motives behind the alleged assault. Even if committed while engaged in OSUMC business, if the alleged assault was simply to gratify his own personal feelings of animosity and resentment, he would not be entitled to immunity. But if the alleged assault were in some, albeit, misguided way, for the purpose of facilitating the business for which the doctor was engaged, he would not be manifestly outside the scope of his employment.

In cases in which employees have assaulted others, courts have found no immunity or no *respondeat superior* liability where the evidence showed the tortfeasor acted solely for his personal benefit. *Szydlowski, supra* (psychological aide engaged in sexual conduct with prison inmates); *Taylor v. Doctors Hosp.* (1985), 21 Ohio App.3d 154, 21 OBR 165, 486 N.E.2d 1249 (radiation orderly sexually assaulted patient, but no *respondeat superior* liability when employee was outside of his appointed tasks and acting to gratify personal impulses); *Hester v. Church's Fried Chicken* (1986), 27 Ohio App.3d 74, 27 OBR 93, 499 N.E.2d 923 (employee assaulted another employee solely out of feelings of personal ill will and malice harbored against his victim).

■ Here, other than the outburst itself, there is no evidence in the record from which the trial court could conclude that Gahbauer acted to gratify personal resentment against Caruso. To the contrary, the evidence before the trial court was that Gahbauer respected Caruso for her secretarial skills, but he was frequently frustrated by what he perceived as irrelevant interruptions. The evidence before the trial court was such that his over-the-top reaction on the day in question was in response to an ongoing area of contention at work, namely, being asked to deal with something that he considered to have no urgency while he was in the middle of an important task. Thus, the alleged assault was not committed to gratify feelings of personal ill will and malice toward Caruso but, rather, to reprimand her for what he believed were unnecessary interruptions. As such, there was a lack of evidence in the record that Gahbauer acted manifestly outside the scope of his employment or with malice.

■ Moreover, the evidence does not support the trial court's finding that Gahbauer's conduct was reckless. As discussed above, the standard for showing reckless or wanton misconduct is high. Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 96–97, 55 O.O.2d 165, 166–167, 269 N.E.2d 420, 422–423. Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all probability, result in injury. *Id.* " 'While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it.' "

*Thompson, supra*, at 105, 559 N.E.2d at 708, quoting 2 Restatement of the Law 2d, Torts (1965) 590, Section 500, Comment *f*.

Conduct arguably more egregious than that of Gahbauer has been held not to rise to the level of wanton or reckless misconduct. In *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35–36, the Ohio Supreme Court found no wanton misconduct when a police chief failed to maintain certain safety devices resulting in a police officer's injury when a prisoner set fire to his mattress. In *Fuson v. Cincinnati* (1993), 91 Ohio App.3d 734, 738, 633 N.E.2d 612, 614–615, the Hamilton County Court of Appeals found that the actions of emergency medical personnel who failed to transport an uncooperative injured person to a hospital did not rise to the level of wanton misconduct. In *Lipscomb v. Lewis* (1993), 85 Ohio App.3d 97, 102, 619 N.E.2d 102, 105–106, the Butler County Court of Appeals held that the actions of a city firefighter driving an ambulance did not constitute wanton or reckless conduct, notwithstanding the firefighter's alleged failure to utilize the siren and signal lights, failure to obey a stop sign, and failure to slow the ambulance below ten miles per hour at an intersection. In *Jackson, supra*, a three-year-old child died as a result of injuries received from repeated beatings administered by her father. There was evidence that the child's injuries were inflicted weeks before her death. The Butler County Court of Appeals held that the conduct of county employees in placing the child with her father and failing to see the child on a face-to-face basis in the weeks before her death was neither negligent nor reckless.

Here, the record reveals that Gahbauer was frustrated and expressed anger. He immediately apologized for his outburst and testified that he had no intention whatsoever to slap Caruso. When he moved toward her and touched her, it was not to threaten her, but to close the door and discuss the incident. The evidence was such that, although the outburst may have been intended, there was a lack of evidence that Gahbauer's conduct would, in all probability, result in injury. As such, there was a lack of evidence in the record that Gahbauer acted recklessly.

Based on the foregoing, appellant's two assignments of error are sustained, and the judgment of the Ohio Court of Claims is reversed and remanded for further proceedings in accordance with this opinion.

*Judgment reversed and remanded for further proceedings.*

PETREE, J., concurs.

KENNEDY, J., dissents.

KENNEDY, Judge, dissenting.

I respectfully disagree with the majority's opinion and, therefore, I dissent. The question of whether Gahbauer acted within the scope of his employment is indeed very fact specific. As a reviewing court, we are obligated to greatly defer to the trier of fact because, among other things, we do not have the benefit of observing the demeanor of the witnesses.

Here, the lower court, through the magistrate, specifically found Gahbauer's actions had no relationship to the conduct of the state's business. This finding is not against the manifest weight of the evidence and is fully supported by the record.

Accordingly, I would affirm the lower court's decision.