**Suron JACOBS, Plaintiffs,**

v.

**VILLAGE OF OTTAWA HILLS, et al., Defendants.**

**No. 3:99CV7082.**

United States District Court, N.D. Ohio, Western Division.

July 24, 2001.

Alan S. Konop, Toledo, OH, for Plaintiff

William S. McCready, Ritter, Robinson, McCready & James, Toledo, OH, Joan C. Szuberla, Spengler Nathanson, Toledo, OH, for Defendants.

## ORDER

CARR, District Judge.

This is a civil rights case brought under 42 U.S.C. § 1983 and related state claims. Pending is plaintiff's motion for summary judgment (Doc. 48) and defendants' cross motion for summary judgment on behalf of Officer Knallay. (Doc. 51).

### Factual Background

On September 28, 1998, plaintiff, a construction worker, was working at the Ottawa Hills High School, located about a block north of the intersection of Indian and Evergreen Roads in the Village of Ottawa Hills, Ohio. He had made arrangements with his brother to meet during his lunch break, which was from 11:30 a.m. to 12:00 noon. He testified that he arrived at the intersection at 11:33 a.m., and had been waiting for about ten minutes when defendant Michelle Miller, an Ottawa Hills Police Officer, arrived at the intersection.

Plaintiff also stated that, when he had first come to the intersection, he saw two officers in separate patrol cars. Shortly after plaintiff arrived, the officers left.

Sometime after 11:30 a.m., someone called the Ottawa Hills Police Department:

Caller: There's a guy—a guy on the corner of Evergreen and Indian—sitting on the fire ... he was sitting on the fire extinguisher [i.e., hydrant] ... doesn't look like he has a purpose and I just want to make sure the children are safe.

Dispatcher: What's he look like?

Caller: Um, he's wearing a baseball cap, he's a black guy, tee-shirt, I don't know what else, but I just want to make sure the children are safe up and down Indian.

Dispatcher: He's sitting there on the corner, huh?

Caller: Just sittin' there on the corner.

Dispatcher: Okay what's your name?

Caller: Pardon me?

Dispatcher: What's your name?

Caller: Oh, well. (nervous chuckle/laughter)

Dispatcher: Mrs. Anonymous?

Caller: Yes.

Dispatcher: Okay, thank you, bye.

(Doc. 23, Exh. D).

After this call, the dispatcher radioed an instruction, to which defendants Miller and another Ottawa Hills Police Officer, James Knallay, responded. The dispatcher used the code, "check an adult," gave a description of the individual, and stated that he "may be lost or confused."

Officer Miller arrived at the corner of Indian and Evergreen Roads at 11:47 a.m. She saw the plaintiff, Suron Jacobs, and turned on her rear flashers.

The Ottawa Hills elementary school is located about a block to the east of the intersection. The pupils' lunch hour is from 11:10 a.m. to 12:05 p.m. There is no evidence in the record that any school children were either headed home or back to school during the ten minutes that plaintiff was at the corner waiting for his brother.

After Officer Miller arrived, she approached the plaintiff, and asked him if he needed help, or what was going on. Plaintiff assured her that he was "all right." Officer Miller then asked if plaintiff were waiting for a ride or if someone was going to pick him up. He told her, "No, I'm supposed to be meeting my brother here."

At that point, according to plaintiff, Officer Miller asked, "What's your brother's name?"

Plaintiff said, "Well, wait a second, when you first approached me you seemed as if you were here to help me. Now you're making me feel as if you're here to harass me. What's the problem. I can't sit right here[?]"

Officer Miller said, "No, it's not that. It's just that somebody called in on you." Plaintiff responded, "Called in on me[?] Wait a second, [t]his is starting to seem like some racial stuff because I'm not doing anything wrong."

Then, according to plaintiff, Officer Miller made a comment to the effect of "don't give me that." At that point, plaintiff refused to give his brother's name, and according to his testimony (which is disputed), told Officer Miller that he was going back to the school.[1]

Although the plaintiff knew that Officer Miller was still asking him questions, he started across Indian Road toward the High School. Officer Miller told him to stop. Plaintiff continued walking, and Officer Miller grabbed him. Plaintiff pulled his arm away, and, facing Officer Miller, asked her what the problem was. Officer Miller grabbed him again, and he again pulled his arm away. He told Officer Miller she had better not hit him again.

In the meantime, Officer Knallay had arrived on the scene. He and Officer Miller grabbed the plaintiff, handcuffed him, took him to Officer Miller's cruiser, and placed him in the back seat. He was taken to the police station and charged with obstructing official business and resisting arrest.

Officer Miller testified that plaintiff had not been free to leave at any time during the encounter. She justified her actions on the basis of a suspicion that plaintiff was in an area with a high volume of traffic by school children, would not answer her questions, and had quickly become defensive. The dispatcher had told her to conduct an investigation to check on the individual who had been seen where plaintiff was found. She was not satisfied with his answers, which were increasingly suspicious, "as if something were mentally

---

1. Officer Miller's account varies somewhat from plaintiff's. According to her deposition, plaintiff initially told her he was fine and was waiting for his brother. When she asked him when his brother was coming, he told her that his brother was not coming to get him. When asked why he was at the corner, he told her that he was waiting for his brother. Then he said she was harassing him and would not have questioned him if he were white. She then told him that someone had called and asked that a patrol officer check on him. She again asked when his brother was coming. She was concerned, and increased the distance between the two of them. Plaintiff, according to her testimony, was upset. She stated that she ordered plaintiff to stop several times as he started to walk away. She was concerned that he might strike her. Though she had asked plaintiff for some identification, he had refused to provide it.

wrong." She had never encountered someone who had "become this defensive and hostile with me."

## I. Federal Claims

In my February 25, 2000 Order, issued after defendant's motion for summary judgment, I found that officers Miller and Knallay violated plaintiff's Fourth Amendment right to be free from unlawful seizure. (Doc. 39 at 5–16). Also, I found that Officers Miller and Knallay were not entitled to qualified immunity. (*Id.* at 16–19). Defendants appealed the denials of qualified immunity to the Sixth Circuit. The Circuit Court affirmed the denial as to Officer Miller, but reversed as to Officer Knallay.

## A. Officer Miller

■ Plaintiff seeks summary judgment against Officer Miller on his Fourth Amendment claim, based on my findings in the February 25 Order, and the Sixth Circuit's order affirming the denial of qualified immunity. Defendants argue that when the facts are viewed in the light most favorable to Officer Miller, there is a genuine issue of material fact as to whether her conduct violated the Fourth Amendment, and whether she is entitled to qualified immunity.

Even when viewing the facts in the light most favorable to Officer Miller, I find that no issue of material fact exists, and that plaintiff is entitled to summary judgment. Defendants assert that Miller: 1) did not know plaintiff had any connection with the school; 2) was concerned something was mentally wrong with plaintiff; and 3) perceived that plaintiff made a threat to her. Based on these facts, defendants assert, a jury should determine whether Miller acted reasonably in seizing plaintiff.

I find each of these arguments to be without merit. First, it makes no difference that Officer Miller did not know plaintiff was doing work at the school. As discussed in my earlier order, when plaintiff walked away from Officer Miller towards the school, he was merely exercising his right to end a voluntary encounter with a police officer, and Miller had no reasonable basis to seize or otherwise detain him. (Doc. 39 at 15–16). Plaintiff's right to walk away, described in *Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), does not depend on Officer Miller having knowledge of where he is headed or why he is departing.

■ Second, Miller's concern that something was "mentally wrong" with plaintiff is another way of phrasing defendants' statement that plaintiff bore a risk to himself or others because he appeared "lost or confused". As discussed in my February 25 Order, "being lost and confused is a common incident of being abroad in unfamiliar surroundings. Standing alone, such condition is not indicative of criminal activity, and a lost or confused individual is just as entitled to walk away from a police officer as is an individual who, like the plaintiff, knows where he is, why he is there, and what he wants to do." (*Id.* at 15).

Third, defendants' argument that Miller perceived plaintiff had made a threat to her does not create an issue of fact as to the reasonableness of Miller's actions in seizing plaintiff. Officer Miller's deposition testimony establishes that the perceived threat occurred after Miller had unlawfully seized plaintiff as he was trying to walk away:

A. I grabbed him by the right arm because he would not stop. He jerked and pulled his arm away from me stating don't touch me. He dropped his one arm. I replied to him don't even think about hitting me.

Q. Did he—what prompted you to say that?

A.  Because I felt he was going to strike me.

Q.  Did he?

A.  No, he did not.

Q.  Did he ever attempt to strike you?

A.  I don't believe so, no.

(Doc. 26 at 43–44).

Officer Miller's subjective belief that plaintiff was going to strike her, *after* she had already commenced an illegal seizure, cannot serve as a basis to hold her immune for her actions. This is especially true in light of the objective evidence that plaintiff made no attempt to strike Officer Miller.

Based on the foregoing, as well as my discussion in my earlier order, I find that summary judgment is appropriate on plaintiff's Fourth Amendment claim against Officer Miller.

### B.  Officer Knallay

The Sixth Circuit found that Officer Knallay was entitled to qualified immunity for the federal charge against him. (Doc. 44). Accordingly, defendants' motion for summary judgment on the federal claim against Officer Knallay shall be granted.

### II.  State Claims

Plaintiff asserts three state claims against the defendants: common law assault, false arrest, and malicious prosecution. In their motion for summary judgment, defendants argued they were entitled to immunity under O.R.C. § 2744.03(A)(6), which provides immunity to governmental employees unless:

(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Liability is expressly imposed upon the employee by a section of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

In my earlier order, I denied defendants' motion for summary judgment on the state claims, finding that, as to both Officers Miller and Knallay, there was evidence which could enable a jury to find for plaintiff on his assault, false arrest, and malicious prosecution claims. Additionally, I found that the officers were not entitled to immunity for their actions, as there was sufficient evidence by which a jury could find the officers acted with "malicious purpose, in bad faith, or in a wanton or reckless manner." (Doc. 39 at 21–27).

█ The terms used in the immunity statute were recently defined in *Caruso v. State*, 136 Ohio App.3d 616, 620–21, 737 N.E.2d 563 (2000) (citations omitted):

Malicious purpose encompasses exercising "malice," which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified.

Bad faith has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another. Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.

Finally, reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reason-

able person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent. The term "reckless" is often used interchangeably with the word "wanton" and has also been held to be a perverse disregard of a known risk. As to all of the above terms, their definitions connote a mental state of greater culpability than simple carelessness or negligence.

In *Caruso* the employee became angry with his secretary, who had interrupted his work. He approached her after asking if she had ever felt angry enough to slap someone. He did not touch her. The court held that he was entitled to immunity:

> Here, the issue of whether [defendant] was entitled to immunity requires an examination of the motives behind the alleged assault.... [I]f the alleged assault was simply to gratify his own personal feelings of animosity and resentment, he would not be entitled to immunity. But if the alleged assault were in some, albeit, misguided way, for the purpose of facilitating the business for which the [defendant] was engaged, he would not be manifestly outside the scope of his employment.
>
> Here, other than the outburst itself, there is no evidence in the record from which the trial court could conclude that [defendant] acted to gratify personal resentment.... As such, there was a lack of evidence in the record that [defendant] acted manifestly outside the scope of his employment or with malice.
>
> Moreover, the evidence does not support the trial court's finding that [defendant's] conduct was reckless. As discussed above, the standard for showing reckless or wanton misconduct is high. Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all probability, result in injury....
>
> The evidence was such that, although the outburst may have been intended, there was a lack of evidence that [defendant's] conduct would, in all probability, result in injury. As such, there was a lack of evidence in the record that [defendant] acted recklessly.

*Id.* at 622, 737 N.E.2d 563 (citations omitted); *see also Lutz v. Hocking Technical College*, 1999 WL 355187, *6 (Ohio App. 4 Dist. May 18, 1999) (defining statute's terms in context of false arrest and excessive force claim).

### A. Officer Miller

Plaintiff asserts that he is entitled to summary judgment against Officer Miller on each of his state claims, based largely on my earlier finding that his constitutional rights had been violated. Accordingly, plaintiff argues that, because of the illegality of his arrest, he is entitled to judgment on his claims for malicious prosecution, false arrest, and assault.

■ I find, however, that I cannot conclude, as a matter of law, that Officer Miller is liable for her actions. Unlike qualified immunity under federal law, the Ohio statutory immunity requires a certain state of mind. In denying defendant's motion for summary judgment on the tort claims, I rejected her demand for statutory immunity, on the basis that a jury could find that Officer Miller's acts had been malicious, in bad faith, or reckless. Now, responding to plaintiff's motion for summary judgment, I reach the same conclusion: the question whether Officer Miller acted "with malicious purpose, in bad faith,

or in a wanton or reckless manner" is one for the jury to decide. Accordingly, plaintiff's motion for summary judgment shall be denied.

### B. State Claims Against Officer Knallay

 In granting Officer Knallay qualified immunity, the Sixth Circuit described his conduct with regards to plaintiff as follows:

> When Officer Knallay arrive [sic] on the scene, Miller was already following Jacobs across the street, rasing her voice and ordering him to stop. Knallay saw Jacobs walk away from Miller, and then Miller attempt to grab Jacobs. He then approached and helped Miller handcuff Jacobs. While officers must affirmatively intervene to prevent other officers from violating an individual's constitutional rights, that obligation does not extend to questioning the basis for a fellow officer's reasons for arrest in this situation.

(Doc. 44 at 9) (internal citations omitted).

This reasoning can be applied to the charges of false arrest and assault against Officer Knallay, and used to reach the conclusion that Officer Knallay did not act with malicious purpose, in bad faith, or in a wanton or reckless manner, and thus is entitled to immunity under § 2744.03.

With regard to the malicious prosecution claim, defendants assert that Officer Knallay "had nothing to do with the preparation of the charges against Jacobs." (Doc. 51 at 8). Plaintiffs do not refute this assertion. Accordingly, I find that an action for malicious prosecution cannot lie against Officer Knallay.

Thus, summary judgment is appropriate on all state claims asserted against Officer Knallay.

### Conclusion

In light of the foregoing, it is

ORDERED THAT;

1. Plaintiff's motion for summary judgment be, and the same hereby is granted with regard to the Fourth Amendment claim against Officer Miller;

2. Plaintiff's motion for summary judgment be, and the same hereby is denied with regard to the state law claims against Officer Miller; and

3. Defendant's motion for summary judgment be, and the same hereby is granted as to the all claims against Officer Knallay.

So ordered.