[Cite as *Haas v. Univ. of Toledo Med. Ctr.*, 2011-Ohio-7011.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

KELLY HAAS

    Plaintiff

    v.

UNIVERSITY OF TOLEDO MEDICAL CENTER

    Defendant

Case No. 2010-11005

Judge Clark B. Weaver Sr.

DECISION

{¶1} This matter came before the court for an evidentiary hearing to determine whether Michael A. Rees, M.D., Ph.D. is entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86. This case arises from an incident in which Dr. Rees, a surgeon, struck plaintiff, a surgical technician, with his foot during a surgery at the defendant hospital on June 6, 2009. Although it is undisputed that Dr. Rees is an employee of defendant, plaintiff alleges that Dr. Rees' actions occurred outside the scope of his employment and that he is therefore not entitled to civil immunity.

{¶2} R.C. 2743.02(F) states, in part:

{¶3} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has

exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶4} R.C. 9.86 states, in part:

{¶5} "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶6} The Supreme Court of Ohio has held that "if an employee's actions are self-serving or have no relationship to the employer's business, then the conduct is 'manifestly outside the scope of employment,' and R.C. 9.86 does not apply." *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, ¶28. "[A]n intentional and willful tort committed by an employee for his own personal purposes constitutes a departure from his employment, so that the employer is not responsible. The fact that the conduct constituting the tort was committed while the employee was on duty and supposedly performing services for his employer, does not render the employer liable where the employee deviated or departed from his employer's business to engage upon a matter for his own personal purposes without benefit to the employer." *Caruso v. State* (2000), 136 Ohio App.3d 616, 621.

{¶7} For purposes of R.C. 9.86, "[m]alicious purpose encompasses exercising 'malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. Bad faith has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another. Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Finally, reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent. The term 'reckless' is often

used interchangeably with the word 'wanton' and has also been held to be a perverse disregard of a known risk." Id. at 620-621. (Internal citations omitted.)

{¶8} Plaintiff testified that her role as a surgical technician entails preparing operating rooms for surgeries and assisting physicians during surgeries, and she explained that her schedule for each shift, including any breaks, is determined daily by the head nurse. On June 5, 2009, plaintiff began a shift at 11:30 p.m. and learned that she was scheduled to assist Dr. Rees with a kidney transplant surgery beginning at 1:00 a.m. on June 6, 2009. Plaintiff testified that she was scheduled to take a break about midway through the surgery, and that nurse Melanie Lemay was scheduled to relieve her during the break.

{¶9} Plaintiff stated that Lemay arrived in the operating room to relieve her at the appointed time, and that after she briefed Lemay on the status of the operation, Lemay took her place at the operating table. Plaintiff stated that she then walked away from the table and toward the door, where nurse Rosalyn Gregory began to assist her in removing her surgical gown. According to plaintiff, she then felt a strong kick on the back of her left leg that caused her leg to give out, she fell forward toward Gregory, and Gregory reached out and caught her. Plaintiff stated that when she turned around, Dr. Rees stood before her, appearing frustrated and angry, and demanded to know where she was going and how long she would be gone.

{¶10} Plaintiff related that after this brief exchange, she proceeded to take her break as scheduled, and that when she returned to the operating room, Dr. Rees apologized. Plaintiff testified that she then replaced Lemay at the operating table and that the rest of the surgery proceeded without further incident.

{¶11} According to plaintiff, she did not have a supervisor who was on duty on the night of the incident, but when she returned to work on June 9, 2009, a supervisor had already learned of the incident and advised her to file a report. Plaintiff stated that defendant subsequently conducted an investigation into the matter which resulted in Dr. Rees sending her a written apology on July 20, 2009. (Defendant's Exhibit A.) Plaintiff stated that she had persistent pain in her leg after the incident, and that in lieu of visiting her personal physician for treatment, she consulted with two physicians at work.

{¶12} Rosalyn Gregory testified that she has been employed by defendant as a registered nurse since 1991. Gregory stated that the head nurse for each shift determines the schedules, including breaks, for all nurses and surgical technicians. Gregory related that she was scheduled to serve as a "circulating nurse" on the night in question, meaning that she assisted during surgeries as needed. Gregory stated that she was present in the operating room throughout the incident, and she described it as follows: Lemay entered the room and "scrubbed in" to relieve plaintiff during her break; plaintiff briefed Lemay on the status of the operation; plaintiff walked from the table toward Gregory for assistance in removing her surgical gown; Rees walked toward plaintiff and delivered a forceful, deliberate kick that caused plaintiff to fall forward; and Gregory extended her arms to catch plaintiff. Gregory stated that the incident left her "in shock," that she "could not believe it happened," and that she had never seen such behavior in an operating room. According to Gregory, Dr. Rees seemed angry as he then briefly spoke with plaintiff, after which time plaintiff took her break.

{¶13} Melanie Lemay testified that she has worked as a registered nurse for defendant for 29 years, with the past six or seven years being in the operating department. Lemay related, though, that she does not regularly assist in surgeries and that she had only assisted in two or three kidney transplants prior to the incident. According to Lemay, she came to the operating room to relieve plaintiff, plaintiff briefed her on the operation, and she took plaintiff's place at the operating table. Lemay stated that Dr. Rees then stepped away from the table, and although she was not looking directly at him, she saw his leg rise up, whereupon plaintiff stated "I can't believe you did that." Lemay testified that when Dr. Rees resumed the operation, he seemed angry. On July 20, 2009, Dr. Rees sent Lemay a written apology for "raising my voice with you and treating you disrespectfully" on the night in question. (Defendant's Exhibit B.)

{¶14} Dr. Rees has served as a professor in defendant's department of urology since 1999. Concerning the incident, Dr. Rees testified that he was focused on the operation and did not realize that plaintiff had left the table until two successive instruments were improperly handed to him, causing him to look up and see that Lemay had relieved plaintiff. According to Dr. Rees, he believed that plaintiff was more

experienced and better suited for this procedure, so he decided to either discourage plaintiff from taking a break or ask her to keep her break short. Dr. Rees stated that in an effort to avoid embarrassing Lemay, he intended to convey this message to plaintiff non-verbally so that Lemay would not notice. Dr. Rees explained that he thus sidled away from the table, extended his leg, and contacted plaintiff's thigh, albeit "with more force than I intended." Dr. Rees stated that plaintiff was removing her surgical gown at the time, with her back to him, and that she was propelled forward by the contact. Dr. Rees stated that he does not recall saying anything to plaintiff other than apologizing when she returned from her break.

{¶15} According to Dr. Rees, he was not angry or frustrated with plaintiff specifically, but he was admittedly frustrated with Lemay's involvement in the procedure. Both in his testimony and in his letter of apology to Lemay, Dr. Rees acknowledged using inappropriate language toward Lemay. Dr. Rees opined that the incident occurred in the midst of what must have been a difficult surgery, given that it lasted twice as long as a typical kidney transplant, and he admitted that he was probably tired. Dr. Rees also admitted that surgical technicians are encouraged to take breaks during lengthy surgeries, that he does not know how such breaks are scheduled, and that he does not determine which nurses and surgical technicians are assigned to assist him. Dr. Rees related that he stopped regularly performing kidney transplants at night in 2005 or 2006 because the long hours wore on him and he had difficulty maintaining his composure.

{¶16} Upon review of the evidence presented at the hearing, the court finds that plaintiff was removing her surgical gown, with her back toward the operating table, when Dr. Rees approached her from behind and intentionally kicked the back of her thigh with such force that she was propelled forward into nurse Gregory and felt persistent pain afterward. Although Dr. Rees characterized his actions as a misguided effort to persuade plaintiff to forego her break, the court finds plaintiff and Gregory's descriptions of the incident to be more persuasive. Gregory, the only witness who observed the kick, testified that Dr. Rees appeared to be angry, that Dr. Rees intentionally kicked plaintiff in such a manner and with such force that Gregory found it shocking, and that Dr. Rees'

conduct was unlike anything she had ever seen in an operating room. Furthermore, while Dr. Rees stated that he intended to communicate non-verbally with plaintiff and does not recall speaking with her, plaintiff testified that immediately after Dr. Rees kicked her, he angrily asked where she was going and how long she would be gone.

{¶17} Based on the totality of the evidence, and upon consideration of each witness's credibility, the court finds that Dr. Rees intentionally kicked plaintiff to gratify personal feelings of animosity or resentment arising out of plaintiff taking her scheduled break and being relieved by Lemay. As such, Dr. Rees engaged in conduct for personal purposes that did not confer a benefit upon his employer, and such conduct constituted a deviation from the scope of his employment.

{¶18} For the foregoing reasons, the court finds that Michael A. Rees, M.D., Ph.D. is not entitled to immunity pursuant to R.C. 9.86 and 2743.02(F). Therefore, the courts of common pleas have jurisdiction over any civil actions that may be filed against him based upon the allegations in this case.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

KELLY HAAS

    Plaintiff

    v.

UNIVERSITY OF TOLEDO MEDICAL CENTER

    Defendant

Case No. 2010-11005

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

{¶19} The court held an evidentiary hearing to determine civil immunity pursuant to R.C. 9.86 and 2743.02(F). Upon hearing all the evidence and for the reasons set forth in the decision filed concurrently herewith, the court finds that Michael A. Rees, M.D., Ph.D. is not entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas have jurisdiction over any civil actions that may be filed against him based upon the allegations in this case. The case is ready to be set for trial.

_____
CLARK B. WEAVER SR.

Judge

cc:

Anne B. Strait
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Scott D. Perlmuter
William J. Novak
Tower City Center
Skylight Office Tower
1660 West Second Street, Suite 950
Cleveland, Ohio 44113-1498

Filed December 5, 2011
To S.C. reporter March 5, 2012