[Cite as *Jodrey v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-1247.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

CHARLES JODREY

     Plaintiff

     v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

     Defendant

Case No. 2010-10343

Judge Clark B. Weaver Sr.
Magistrate Matthew C. Rambo

MAGISTRATE DECISION

{¶1} Plaintiff filed this action alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} In order for plaintiff to prevail upon his claim of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶8, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77.

{¶3} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Pickaway Correctional Institution (PCI) pursuant to R.C. 5120.16. Plaintiff testified that he has been incarcerated at PCI since 2008, and has been largely confined to a wheelchair since he suffered a stroke in December 2006 that almost entirely paralyzed his left side. According to plaintiff, on September 9, 2009, he was housed in the Frazier Hospital at PCI, and he called for Corrections Officer Jason Martin to accompany him to the shower as was normal procedure. Plaintiff testified that Martin came to his cell and escorted him to the shower area by walking next to his wheelchair

while he used his right foot to pull himself along. Plaintiff stated that the shower room is approximately 250 feet from his cell. Plaintiff described the shower room as having a door at each end connected by a hallway with showers on one side and a changing area on the other. Plaintiff testified that on the day in question, Martin escorted him into the hallway area, then left the room and closed the door, allowing him some privacy in the shower. According to plaintiff, he was able to remove his prison jumpsuit, use metal bars in the shower area to pull himself out of the wheelchair and onto a small stool in the shower, and bathe himself.

{¶4} Plaintiff stated that as he was attempting to dress following his shower, Martin began rushing him, so he put his underwear on, sat in the wheelchair, and merely covered his legs with his jumpsuit for the return trip to his cell. Plaintiff testified that he and Martin were about halfway back to his cell when he realized that he left his soap in the shower. According to plaintiff, Martin became agitated at this and pushed him back to the shower room to hasten the trip. Plaintiff testified that Martin pushed him into the shower room, followed him in, shut the door behind him, picked up the rear right side of the wheelchair, dumped him onto the floor, and flipped the wheelchair on top of him. Plaintiff stated that Martin then said, "You all right Mr. Jodrey? I'll go get help." Martin left the room and returned with a nurse's aide who helped plaintiff back into the wheelchair and cleaned him up.

{¶5} Plaintiff testified that he suffered a laceration to his left arm as a result of the fall, and was taken immediately to the infirmary where x-rays were taken of his left hip, but he is unaware of the results. Although he stated in his complaint that Martin was negligent in handling the wheelchair and such negligence caused him to fall out of it, plaintiff stated at trial that he believes that Martin dumped him out of the wheelchair intentionally and with malicious purpose because Martin was angry at having to return to the shower room.

{¶6} Martin's deposition testimony was admitted in lieu of his live testimony inasmuch as he is no longer employed by defendant and lives outside of the state. (Defendant's Exhibit A.)   Martin testified that prior to the incident he had escorted plaintiff to the shower between five and seven times.   According to Martin, on this occasion, he walked next to plaintiff while he traveled to the shower room.  Martin stated that he briefly left the area after plaintiff entered the shower room to find a chair to sit in while plaintiff was showering.  Martin testified that when he returned with the chair, he heard plaintiff moaning, went into the shower room, and observed plaintiff on the floor. Martin stated that he went to get a nurse instead of helping plaintiff up because the nurse would be in a better position to evaluate his medical condition before moving him. According to Martin, he did not prepare and file a report after the incident because he believed that the medical personnel involved would do so.  Martin testified that he did not push plaintiff's wheelchair on that day or at any time previous.

{¶7} The court finds that plaintiff's testimony is more credible than that of Martin and that Martin purposefully upended plaintiff's wheelchair causing plaintiff to fall to the ground and then dropped the wheelchair on top of him.  Based upon that finding, Martin's civil immunity becomes an issue in this case.

{¶8} R.C. 2743.02(F) states, in part:

{¶9} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶10} R.C. 9.86 states, in part:

{¶11} "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶12} It is undisputed that Martin was an employee of defendant at the time of the incident.　The question whether the employee acted outside the scope of his employment, or with malicious purpose, in bad faith, or in a wanton or reckless manner is one of fact.　*Tschantz v. Ferguson* (1989), 49 Ohio App.3d 9.

{¶13} "Malicious purpose encompasses exercising 'malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified.　Bad faith has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another.　Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.　Finally, reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent.　The term 'reckless' is often used interchangeably with the word 'wanton' and has also been held to be a perverse disregard of a known risk." *Caruso v. State* (2000), 136 Ohio App.3d 616, 620-621.　(Internal citations omitted.)

{¶14} While Martin was ostensibly performing his escort duties at the time of the incident, the court finds that Martin's intention when he upended the wheelchair was to harm plaintiff and that he acted with malicious purpose in doing so.　Accordingly, it is recommended that the court issue a determination that Jason Martin is not entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common

pleas have jurisdiction over any civil actions that may be filed against him based upon the allegations in this case.

{¶15} However, the court finds that plaintiff has not pleaded a claim for relief based upon defendant's negligence in hiring, training or supervising Martin nor has he presented any evidence in support of such a claim against defendant. Accordingly, judgment is recommended in favor of defendant on plaintiff's negligence claim.

{¶16} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
MATTHEW C. RAMBO
Magistrate

cc:

Kristin S. Boggs
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Jason Martin
3430 Broad River Road
Apt. 710
Columbia, South Carolina 29210

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

MCR/dms
Filed January 13, 2012
To S.C. reporter March 23, 2012