OPINION.
{¶ 1} Appellant, Jared J. Crable, appeals his conviction and sentence following a bench trial in Belmont County Court, Western Division, on one count of unauthorized use of a motor vehicle and one count of trespassing. The crucial evidence consisted of a number of out-of-court statements made by the property owner, but related by other witnesses, which should have been excluded as inadmissible hearsay. Appellant's counsel properly objected to the hearsay statements at the earliest opportunity to do so. Although the trial court sustained the objection and explained that he would not rely on the statements for the truth of the matters asserted, the record reflects that the trial court did, in fact, rely on the hearsay statements in rendering its decision. The hearsay evidence was not admissible. Because this evidence formed the basis of the state's case, we must reverse the trial court's judgment.
 {¶ 2} On the evening of February 25, 2002, Appellant was at the residence of Jean Hunter ("Jean") in Belmont, Ohio. Jean was in Florida at the time. A neighbor, Greg Zelenitz, saw Appellant driving Jean's car out of the garage. (Tr., p. 7.) When Zelenitz drove his own car into Jean's driveway, Appellant drove back into the garage, jumped out of the car and ran into Jean's house. (Tr., p. 7.) Zelenitz called the police. Zelenitz said he told Appellant on a number of previous occasions to stay off of Jean's property.
 {¶ 3} Appellant was dating Jean's daughter, Kelly. (Tr., p. 10.) Although Kelly lived at her mother's residence in Belmont, she was not there on the night of this incident. (Tr., p. 14.)
 {¶ 4} Appellant was charged with one count of unauthorized use of a motor vehicle in violation of R.C. 2913.03(A), a first degree misdemeanor, and one count of trespassing in violation of R.C.2911.21(A)(3), a fourth degree misdemeanor. The matter was heard at a bench trial on April 23, 2002. The state presented two witnesses: Zelenitz and Deputy Tim Scott of the Belmont County Sheriff's Department. At the close of trial, the court found Appellant guilty of the two charges. On April 24, 2002, the trial court filed two judgment entries disposing of the charges. The first entry, dealing with unauthorized use of a motor vehicle, sentenced Appellant to 180 days in jail, all suspended. In the second entry, dealing with the trespassing charge, the court sentenced Appellant to thirty days in jail, with twenty of those days suspended. This timely appeal followed.
 {¶ 5} Although Appellant presents four assignments of error, the fourth assignment of error completely resolves this appeal:
 {¶ 6} "Defendant was denied his right to confront witnesses when the court allowed improper hearsay testimony."
 {¶ 7} Appellant argues that the trial court based its decision on hearsay statements of two witnesses. Hearsay is, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is not admissible as evidence, unless the evidence falls under a specific exception to the hearsay prohibition. Evid.R. 802 ff. The purpose of the hearsay rule is to keep untrustworthy evidence, particularly evidence that is not subject to cross-examination, away from the jury or trier of fact. Peppers v. Ohio Dept. of Rehab. Corr.
(1988), 50 Ohio App.3d 87, 89, 553 N.E.2d 1093. Historically, the purpose of the hearsay rule was, "to exclude statements of dubious reliability that cannot be tested by cross-examination." State v. Yarbrough (2002),95 Ohio St.3d 227, 239, 767 N.E.2d 216.
 {¶ 8} The hearsay rules protect many of the same interests that are protected by the Confrontation Clause of the Sixth Amendment, which states: "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." A similar provision appears in Section 10, Article I of the Ohio Constitution: "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face * * *."
 {¶ 9} "`The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.'" State v. Madrigal (2000),87 Ohio St.3d 378, 384, 721 N.E.2d 52, quoting Maryland v. Craig (1990),497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666.
 {¶ 10} "To constitute hearsay, two elements are needed. First, there must be an out-of-court statement. Second, the statement must be offered to prove the truth of the matter asserted." State v. Maurer
(1984), 15 Ohio St.3d 239, 262, 473 N.E.2d 768.
 {¶ 11} There are many exceptions to the hearsay rule and these exceptions allow for the introduction of many types of out of court statements that are inherently trustworthy. Evid.R. 803, 804. These exceptions include statements contained in public records, statements made for the purpose of medical treatment, statements appearing in records of vital statistics, statements in ancient documents, and prior testimony that was subject to cross-examination, to name a few.
 {¶ 12} Appellant objected at trial to the testimony of Zelenitz concerning certain statements purportedly made by Jean. (Tr., p. 6.) Of particular interest is this statement: "He [Appellant] was requested not to be on the property by Ms. Hunter and she didn't want him around there and asked me if I'd ever see him there to tell him to leave." (Tr., p. 6.) The trial court allowed this testimony, but told the parties that it was not to be used for the truth of the matter asserted. (Tr., p. 6.) As explained above, if evidence is not offered for the truth of the matter asserted, it is not considered to be hearsay. Maurer, supra, at 262.
 {¶ 13} The assertions which form the basis of this case are that Jean appointed Zelenitz as her agent to watch over her property and that she did not allow Appellant to be on her property. The trial court initially informed the parties that these statements would not be used as proof that the assertions were true. In reaching its decision, however, the trial court clearly relied on Jean's statements as proof that Zelenitz was authorized to act as her agent and as proof that Jean prohibited Appellant from being on the property. At the close of the trial, the judge made these comments:
 {¶ 14} "The evidence from the State of Ohio indicates that a person who was a purported agent of the owner advised the defendant not to either use the vehicle or to enter upon the premises. The information that was given to that agent by the owner was introduced through an out-of-court statement, but that would be an exception to the hearsay rule under the present sense impression and state of mind that she was reflecting to the agent that this was her position with respect to access to her property under circumstances in which the reliability of that statement is really not in issue." (Tr., pp. 21-22.)
 {¶ 15} The trial court's ultimate conclusion about the admissibility of the out of court statement is incorrect. The "present sense impression" exception to the hearsay rule, found in Evid.R. 803(1), only applies to, "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness."
 {¶ 16} "The principle underlying this hearsay exception is the assumption that statements or perceptions, describing the event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness. The key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter. By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived — a fact which obviously detracts from the statement's trustworthiness." Cox v. Oliver Machinery Co. (1987), 41 Ohio App.3d 28,35, 534 N.E.2d 855.
 {¶ 17} Jean's directive to Zelenitz to watch her house does not describe an event or condition that Jean was perceiving when she made the statement. The out-of-court statement is simply a direction that Zelenitz should act as her agent and that Appellant was not allowed on the property, not a reflection of any perception of Jean's. Therefore, the hearsay assertion does not qualify as admissible evidence under the "present sense impression" exception.
 {¶ 18} The hearsay exception for existing mental, emotional, or physical conditions in Evid.R. 803(3) refers to, "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." This exception is usually reserved for spontaneous statements about a witnesses' emotions, particularly fear, or for statements indicating future plans or future intent. State v. O'Neal (2000), 87 Ohio St.3d 402, 411,721 N.E.2d 73.
 {¶ 19} State of mind statements are relevant to provide an inference that the declarant subsequently acted in a way consistent with that prior state of mind. State v. Hawn (2000), 138 Ohio App.3d 449,458, 741 N.E.2d 594. In other words, if the declarant said, "I plan to rob a bank," that statement could be used to infer that he later robbed a bank.
 {¶ 20} Out-of-court statements about a declarant's existing state of mind are considered trustworthy because their spontaneity makes them as reliable as similar kinds of statements made on the witness stand. Weissenberger, Ohio Evidence (2002), 414, Section 803.30.
 {¶ 21} Jean's out-of-court request to Zelenitz to watch over her property does not reveal her own future intent or plan, and does not express an emotion. It is simply a request that Zelenitz perform some act. The same is true for the assertion that Appellant should not be permitted on her property. These are not the types of hearsay statements that were intended to be allowed as evidence under the "state of mind" exception.
 {¶ 22} The prosecutor introduced other hearsay statements of Jean through the testimony of Deputy Scott. He testified that he contacted Jean on February 26, 2002. (Tr., p. 14.) Deputy Scott testified, based on that conversation, that he concluded "[t]here was no indication that he [Appellant] was granted permission." (Tr., p. 17.) According to Deputy Scott, Jean told him that no one was permitted to use her vehicle, "because the insurance was placed in a holder or cancelled." (Tr., p. 14.)
 {¶ 23} Deputy Scott also produced hearsay testimony from Kelly. Deputy Scott testified that he had talked to Kelly, that she did not invite Appellant to the house, and that, "[f]rom all of the indications we had, he was not supposed to be in the residence." (Tr., p. 15.)
 {¶ 24} Deputy Scott further testified on cross-examination that Kelly made comments indicating that she and Appellant were dating. (Tr., p. 18.) Zelenitz had previously testified that Kelly and Appellant were dating but that he was not sure if they were still dating on the night of the alleged crime. (Tr., p. 10.) He also indicated that Kelly was living at home with Jean prior to the evening of the alleged crime. (Tr., p. 11.)
 {¶ 25} The record contains other hearsay testimony originating with Kelly but not introduced by her that she was in the hospital the night the crime was committed, and that she did not give Appellant permission to be at Jean's house on the night of the alleged crime. (Tr., pp. 14-15.)
 {¶ 26} The record reflects that the state's case was based almost entirely on hearsay testimony and that this hearsay testimony was not wholly consistent. Thus, we must determine whether introduction of the hearsay testimony into evidence was harmless. In order to avoid a reversal of the conviction, "the evidence in favor of conviction, absent the hearsay, must be so overwhelming that the admission of those statements was harmless beyond a reasonable doubt." State v. Kidder
(1987), 32 Ohio St.3d 279, 284, 513 N.E.2d 311; see, also, State v.Sorrels (1991), 71 Ohio App.3d 162, 165, 593 N.E.2d 313.
 {¶ 27} We begin this analysis with a review of the elements of the crimes that the state was required to prove to see if other evidence in the record supported those elements. Turning to the required elements of criminal trespass, the state must first prove lack of privilege: "(A) No person, without privilege to do so, shall do any of the following: (1) Knowingly enter or remain on the land or premises of another * * *." (Emphasis added.) R.C. 2911.21(A)(1). Privilege is defined in the criminal code as, "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).
 {¶ 28} To prove that Appellant violated R.C. 2911.21(A)(1), the state needed to establish that: (1) Appellant did not have privilege to be on the property; and (2) he knowingly entered the property. Proof that Appellant was not permitted on the property was obviously crucial to the state's case. The prosecutor chose to establish this fact purely by the use of hearsay. It is obvious from the state's witnesses that there were questions about whether Appellant had previously been allowed on the property (because he dated Kelly) or whether he had some kind of approval from Jean to use the property. In fact, Zelenitz's testimony may indicate that Jean tacitly gave Appellant permission to be on the property:
 {¶ 29} "Q. [Appellant's counsel]: Did she [Jean Hunter] indicate
to you a desire that these charges not proceed?
 {¶ 30} "A. [Zelenitz]: Her desire really is that she doesn't want to see Mr. Crable go to jail, but she also doesn't want him around her property, either.
 {¶ 31} "Q. She expressed her desire to you to have these charges dismissed?
 {¶ 32} "A. She never came right out those exact words [sic], but she said she really didn't want to see Jared go to jail is what she said to me. She just doesn't want any more problems there. That's her desire." (Tr. p. 15.)
 {¶ 33} Zelenitz did not appear to be entirely clear in his own mind as to what Jean's hearsay statements meant. Obviously, Appellant's counsel could not cross-examine Jean about the statements because she was not present at the trial.
 {¶ 34} There is no evidence in the record, apart from hearsay, that Appellant did not have permission to be on the property. The hearsay testimony itself is internally inconsistent. The hearsay evidence offered at trial obviously dictated the trial court's decision regarding the trespassing charge. Thus, the threshold element necessary to prove this crime was not validly offered or proved.
 {¶ 35} Turning to the crime of unauthorized use of a motor vehicle, lack of consent is one of the primary elements. "(A) No person shall knowingly use or operate an aircraft, motor vehicle, motorcycle, motorboat, or other motor-propelled vehicle without the consent of theowner or person authorized to give consent." (Emphasis added.) R.C.2913.03(A). The only evidence that Appellant lacked consent was the hearsay testimony of Jean provided by Deputy Scott, who testified as follows:
 {¶ 36} "[Prosecutor]: Was there any indication that he [Appellant] had a right to drive her vehicle?
 {¶ 37} "[Deputy Scott]: No, ma'am. She specifically stated that neither her daughter nor Mr. Crable was supposed to be driving that vehicle, because the insurance had been placed in a holder or cancelled. No one was supposed to be utilizing that vehicle." (Tr., p. 14.)
 {¶ 38} Again, Appellant was prejudiced by the inadmissible hearsay because there was no other evidence supporting the "lack of consent" element of the second charge without the hearsay testimony.
 {¶ 39} The trial court convicted Appellant of two crimes that were essentially crimes against an individual, Jean Hunter, and yet, the victim never appeared at trial. The key issues in this case could only have been resolved by using information provided by Jean and/or her daughter Kelly. That information was brought into the trial as hearsay. It appears that Jean was living in Florida while this criminal action transpired, but there is no indication that the state attempted to secure admissible evidence from her in any other fashion. For example, if Jean was unavailable for trial, Appellee might have been able to secure her testimony through the use of one of those hearsay exceptions set forth in Evid.R. 804. There is no indication that Appellee attempted to procure evidence from Jean which was acceptable under other hearsay exceptions. Furthermore, there is no indication that Kelly was unavailable for trial or that Appellee attempted to procure her appearance at trial. The state chose simply to rely on hearsay. Appellant was left with the untenable situation of facing his accusers purely through this inadmissible hearsay evidence.
 {¶ 40} Although Appellant raised only one hearsay objection at trial, this was sufficient to preserve the error he has raised on appeal. The trial in this case was very brief. The entire trial transcript, including sentencing, is only twenty-five pages long. We also note that this was a bench trial. The trial judge's ruling on the hearsay objection made it clear that Appellant did not need to continue raising the same hearsay objection each time a witness introduced something Jean said. The trial judge stated at trial: "I'm only accepting it for the fact that the statement was made not for the truth of the content of the statement. I understand that." (Tr., p. 6.) Appellant could not have predicted that the trial judge would later apparently change his mind.
 {¶ 41} It is clear that the trial court relied on the hearsay statements for the truth of the matters asserted. The hearsay statements were the only pieces of evidence tending to show that Appellant lacked the privilege to be on the property and lacked consent to use the car. Based on the state's decision to rely entirely on inadmissible hearsay to prove the critical elements of its case, we hereby sustain Appellant's fourth assignment of error, reverse the two Judgment Entries filed on April 24, 2002, and dismiss the two charges against Appellant. Because our decision on this issue completely resolves this matter, Appellant's remaining assignments of error are moot.
Donofrio and Vukovich, JJ., concur.