[Cite as *Morrison v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-2696.]

| | |
|---|---|
| JAMES F. MORRISON | Case No. 2015-00653 |
| Plaintiff | Magistrate Gary Peterson |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, an inmate in the custody and control of defendant, the Ohio Department of Rehabilitation and Correction (ODRC), brings this action claiming that defendant was negligent in failing to prevent an attack upon him by another inmate, James Hunt, on August 5, 2013. Plaintiff also claims that Corrections Officer (CO) Connie Carpenter engaged in a civil conspiracy with Hunt to injure plaintiff. Plaintiff requests that the court determine CO Carpenter's civil immunity. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability. The court also tried the issue of CO Carpenter's civil immunity.

{¶2} Plaintiff testified that in 2012, he was convicted of attempted pandering. As a result of that conviction, plaintiff was required to register as a sex offender. Plaintiff stated that he was subsequently placed in defendant's custody at the Richland Correctional Institution (RiCI) in the 4 lower housing unit. Plaintiff testified that after arriving at RiCI, two inmates, who were also brothers, questioned plaintiff about his criminal charges that led to his incarceration. According to plaintiff, the two inmates personally know CO Hinberger who was assigned to work the third shift. As a result, plaintiff wrote an informal complaint regarding the incident. Plaintiff stated that he later learned that CO Hinberger was disciplined as a result of the informal complaint. Plaintiff

asserted that he subsequently learned that at that time CO Hinberger and CO Carpenter were engaged in an intimate relationship.

{¶3} Plaintiff testified that he was subsequently reassigned to the 5 lower housing unit where CO Carpenter worked as a relief officer on Sunday and Monday nights. Plaintiff reported that third shift inmate porters spent an inordinate amount of time socializing with third shift COs, including CO Carpenter.  According to plaintiff, CO Carpenter frequently made derogatory comments about him, verbally harassed him, and referenced legal arguments that were made during his criminal appeal.  Plaintiff described one such instance of harassment that occurred on July 29, 2013, where CO Carpenter awoke him by stating: "You fat mother fucker! Get up! Take your lazy ass to work!"  Plaintiff stated that CO Carpenter also called him a "one clicker" and made the sound of a clicking noise, which he believed to be a reference to arguments made during the appeal of his criminal conviction.

{¶4} Plaintiff testified that after returning from his work assignment on July 29, 2013, he wrote an informal compliant detailing the manner in which CO Carpenter woke him earlier in the morning.  Plaintiff reports that on August 2, 2013, Lieutenant Drew Crago addressed the informal complaint in writing by noting that CO Carpenter denies all wrongdoing but was nevertheless advised to be professional in her duties.

{¶5} Plaintiff testified that on August 5, 2013, at approximately 4:15 p.m., inmate Hunt physically struck him with a lock.  Plaintiff stated that it was obviously an act of retaliation for writing an informal complaint regarding CO Carpenter's actions.  Plaintiff explained that he believed CO Carpenter to be involved because of her actions, her verbal attacks, and her interest in his criminal conviction.  Following the attack, plaintiff learned that two inmates, one of whom was Hunt, were placed in segregation for the attack and that the Ohio State Highway Patrol (OSHP) initiated an investigation of the attack.  Finally, plaintiff testified that an incident report regarding the attack was not completed and that no suspects were listed in the notification to the OSHP.

{¶6} Trooper Bryan Butler testified that he began working for OSHP in 1997 and that he currently works as a detective in what is considered the central office. Trooper Butler stated that he was previously assigned to conduct investigations at RiCI for approximately a three-year period. Trooper Butler recalled that during that time period, he was assigned to conduct an investigation wherein plaintiff was the victim of a physical attack by another inmate. According to Trooper Butler, staff at RiCI reported to him that plaintiff, while he was using the restroom, was attacked by an unknown inmate who had used a lock and a sock to strike him. Trooper Butler stated that as a result, he commenced an investigation of the attack.

{¶7} Trooper Butler testified that during the course of investigating the attack on plaintiff, he began investigating whether the crime of complicity was also committed. Trooper Butler stated that CO Carpenter was the primary suspect of the investigation concerning complicity; however, Trooper Butler added that he began the investigation concerning complicity due to plaintiff's representations that CO Carpenter directed or conspired with Hunt to carry out the attack. Trooper Butler added that due to the allegations made by plaintiff, he was obligated to expand the investigation's scope to include an investigation into an alleged crime of complicity.

{¶8} Trooper Butler testified that on February 21, 2014, he interviewed CO Carpenter. Trooper Butler reported that CO Carpenter stated that she heard that Hunt and other inmates discussed plaintiff's crime and stated that he needed to have his ass beat. Trooper Butler added that he did not know whether CO Carpenter knew that information before or after Hunt attacked plaintiff. Trooper Butler testified that he did not find any corroborating evidence to substantiate plaintiff's allegation that CO Carpenter directed or conspired with Hunt to attack plaintiff. Trooper Butler stated that he completed his report and submitted it to the county prosecutor's office, which he said is standard practice.

{¶9} CO Carpenter testified that she began working as a CO for ODRC in 2009 and began at RiCI on January 1, 2012. CO Carpenter reported that in 2013, she was assigned to work the third shift, from 10 p.m. to 6 a.m. CO Carpenter stated that she worked as a relief officer in the dormitory housing units and worked in 5 lower housing unit on Sundays. CO Carpenter explained that inmate porters perform their cleaning duties during the third shift and that Hunt was assigned to work as a dorm porter during July and August 2013. CO Carpenter acknowledged that both she and Hunt are from the same residential area and that she knows of Hunt's family, although she denied personally knowing him or his family. CO Carpenter testified that she did not complete a nexus form, a form documenting personal relationships between an inmate and a CO, because she does not personally know Hunt.

{¶10} CO Carpenter denied making derogatory comments to plaintiff, denied verbally harassing him, denied calling him lazy, and denied calling him a one clicker— an apparent reference to his criminal case. CO Carpenter testified that she was unaware of plaintiff's criminal charges prior to the attack and denied being disciplined as a result of any complaint written by plaintiff. Regarding the report that she heard that inmates were discussing plaintiff's criminal case, CO Carpenter testified that she learned after the attack occurred that inmates were discussing plaintiff's case and reported that to Trooper Butler. CO Carpenter denied ever personally overhearing inmates discuss plaintiff's criminal charges or discuss attacking him. CO Carpenter added that if she had overheard such a conversation, she would have reported it to the shift captain.

{¶11} "To recover on a negligence claim, a plaintiff must prove by a preponderance of the evidence (1) that a defendant owed the plaintiff a duty, (2) that a defendant breached that duty, and (3) that the breach of the duty proximately caused a plaintiff's injury." *Ford v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 05AP-357, 2006-Ohio-2531, ¶ 10. "In the context of a custodial relationship between the state

and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 8. "Although the state is not an insurer of the safety of inmates, once it becomes aware of a dangerous condition it must take reasonable care to prevent injury to the inmate." *Briscoe v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 02AP-1109, 2003-Ohio-3533, ¶ 20. "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 04AP-177, 2004-Ohio-5545, ¶ 16.

{¶12} "Where one inmate attacks another inmate, actionable negligence arises only when there was adequate notice of an impending attack." *Lucero v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-288, 2011-Ohio-6388, ¶ 18; *see also Literal v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 16AP-242, 2016-Ohio-8536. "Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, ¶ 9. "Whenever the trier of fact is entitled to find from competent evidence that information was personally communicated to or received by the party, the notice is actual. Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶ 14.

{¶13} Upon review of the evidence, the magistrate finds that on August 5, 2013, plaintiff was using the restroom when Hunt struck plaintiff with a lock and a sock. Plaintiff did not testify, or present any evidence, that he anticipated the attack by Hunt.

{¶14} The magistrate further finds that plaintiff failed to prove by a preponderance of the evidence that defendant had actual notice that Hunt would attack plaintiff. Plaintiff points to a statement in Trooper Butler's report to demonstrate that CO Carpenter directed or conspired with Hunt to carry out the attack. The statement was that CO Carpenter heard that inmates, including Hunt, discussed plaintiff's criminal conviction and indicated that he needed his ass beat. However, the statement does not establish that CO Carpenter was aware, prior to the attack, that Hunt or others plotted to attack plaintiff. Furthermore, CO Carpenter testified that she did not personally hear inmates discussing plaintiff's criminal case and that she only learned through rumors that inmates discussed plaintiff's criminal case. Moreover, CO Carpenter testified that she learned of the rumors after Hunt attacked plaintiff.

{¶15} While there is some evidence that CO Carpenter and Hunt may have been familiar with each other, such familiarity does not establish that CO Carpenter directed or conspired with Hunt to attack plaintiff. CO Carpenter testified that she did not complete a nexus report regarding Hunt because she did not personally know Hunt. That they both previously lived in the same residential area does not contradict CO Carpenter's statement, nor does it establish that CO Carpenter plotted with Hunt to harm plaintiff. Even assuming that CO Carpenter made derogatory comments toward plaintiff, verbally harassed plaintiff, or otherwise acted in an unprofessional manner as a CO, plaintiff failed to persuade the magistrate that CO Carpenter was involved in Hunt's attack on plaintiff. Accordingly, plaintiff failed to prove that defendant or CO Carpenter had actual notice of Hunt's attack on plaintiff.

{¶16} Plaintiff did not argue that defendant had constructive notice of an impending attack; rather, as noted above, plaintiff argued that CO Carpenter directed or conspired with Hunt to attack plaintiff. Nevertheless, the magistrate finds that plaintiff failed to prove by a preponderance of the evidence that defendant had constructive notice of an impending attack. There is no evidence that Hunt exhibited violent

tendencies or assaultive behavior toward plaintiff or any other inmate. *Literal* at ¶ 17. There is no evidence that Hunt threatened or acted violently toward plaintiff or any other inmate. *Id*; *see also Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-932, 2016-Ohio-360. In short, plaintiff failed to prove that defendant had constructive notice of an impending attack.

{¶17} To establish a civil conspiracy claim, plaintiff must establish "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 40 (10th Dist.), quoting *Kenty v. Transamerica Premium Ins*. Co., 72 Ohio St.3d 415, 419. "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998). Having previously concluded that plaintiff failed to prove his claim for negligence by a preponderance of the evidence, the magistrate likewise concludes, for the reasons set forth above, that plaintiff failed to prove by a preponderance of the evidence that CO Carpenter conspired with Hunt to injure plaintiff.

{¶18} Turning to the issue of CO Carpenter's immunity, R.C. 2743.02(F) states, in part:

{¶19} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶20} R.C. 9.86 states, in part:

{¶21} "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶22} "In accordance with R.C. 2743.02(F), the Court of Claims 'has exclusive jurisdiction to determine whether a state employee is immune from liability under R.C. 9.86.'" *Nix v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 13AP-547, 2014-Ohio-2902, ¶ 22, quoting *Johns v. Univ. of Cincinnati Med. Assocs.*, 101 Ohio St.3d 234, 2004-Ohio-824, syllabus.

{¶23} As stated previously, plaintiff failed to prove by a preponderance of the evidence that CO Carpenter conspired with Hunt to attack plaintiff. As a result, plaintiff failed to prove that CO Carpenter acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. *See Zidron v. Metts*, 10th Dist. Franklin No. 15AP-1049, 2017-Ohio-1118, ¶ 43, (holding that the burden of proof rests with the party seeking to disprove immunity). Accordingly, the magistrate finds that at all times relevant, Connie Carpenter acted within the scope of her employment with ODRC.

{¶24} Based upon the foregoing, the magistrate finds that plaintiff failed to prove his claims by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendant. Additionally, it is recommended that the court issue a determination that Connie Carpenter is entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against her based upon the allegations of this case.

{¶25} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first*

*objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
GARY PETERSON
Magistrate

cc:

James F. Morrison, #A667-172            Lee Ann Rabe
1001 Olivesburg Road                    Assistant Attorney General
Mansfield, Ohio 44905                   150 East Gay Street, 18th Floor
                                        Columbus, Ohio 43215-3130

**Filed March 29, 2017**
**Sent to S.C. Reporter 5/5/17**