[Cite as *Shine v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-3651.]

| | |
|---|---|
| STACIE E. SHINE | Case No. 2021-00460JD |
| Plaintiff | Magistrate Robert Van Schoyck |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff brings this action arising out of allegations that an employee of defendant, Kenneth Myers, sexually harassed her in the workplace at the Allen Oakwood Correctional Institution (AOCI). At the parties' request, this matter came on for an evidentiary hearing to determine whether Myers is entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F). Myers did not participate in the hearing.

{¶2} Plaintiff testified at the hearing that she is employed with Sinclair Community College in a role that required her to work three or four days a week at AOCI during the time at issue in this case. She explained that while defendant was not her direct employer, when she was at AOCI she reported to a deputy warden.

{¶3} Initially, plaintiff stated, she had only infrequent, occasional interactions with Myers, who served as the Health and Safety Coordinator for AOCI. By around January 2019, though, Myers was making frequent visits to see her and having unwanted interactions with her that were very personal and unprofessional, as plaintiff described. According to plaintiff, Myers made comments about her body, like saying "nice ass" or "you look very nice today", and he asked several times about whether she was happy with her marriage or if she was willing to step out of her marriage. In response, plaintiff testified, she would remind Myers he was married and that his wife worked at AOCI.

{¶4} In addition to the personal interactions Myers initiated with plaintiff, beginning in January 2019 he also called her office phone from phones throughout AOCI and from

his personal cell phone, she stated. Some days he would call as many as three to five times, plaintiff recalled. By approximately March 2019, plaintiff stated, Myers also began sending text messages to her personal cell phone, and he explained to her that his position at AOCI gave him access to her personal phone number. According to plaintiff, she received text messages from Myers both inside and outside of work hours and the messages included remarks about her body, queries about her marriage, innuendos, and photographs of his penis. Plaintiff recounted that Myers also asked her to send him nude photographs of herself and to connect with him on the messaging app Snapchat so that any communications between them would self-destruct.

{¶5} Plaintiff testified that Myers would appear in her work area almost daily despite having no reason to be there and that at times his behavior prevented her from doing her job. Plaintiff identified one instance of Myers touching her, in which he placed his hands on her shoulders and then slid his hands down to her buttocks. According to plaintiff, she asked him to leave her office at that time. Plaintiff described trying to avoid Myers and asking others who worked in her building to alert her if they saw Myers coming so that she could move from her office to an area where there were more people around. Plaintiff also described Myers letting her know that he had been watching her movements around the compound, going so far as using defendant's surveillance cameras to monitor her whereabouts.

{¶6} Plaintiff felt intimidated by Myers and that he had some influence over her position at AOCI. As plaintiff explained, as a contractor she felt that she was only a guest at AOCI whereas Myers, an employee of defendant, told her that he knew people who could fire her and she believed that he could cause her to lose her job there. Nevertheless, plaintiff testified that in July 2019 she reported Myers' conduct to AOCI officials and she subsequently gave investigatory interviews to prison authorities on July 16 and November 8, 2019. Plaintiff testified that she also notified her employer,

Sinclair Community College, of Myers' conduct at some point. As far as plaintiff could recall, Myers left AOCI in late July or early August 2019.

{¶7} Joanna "Jodi" Factor testified that she retired in 2022 after 33 years of employment with defendant, having served most recently in the role of Corrections Warden Assistant II at AOCI. Describing her responsibilities in that role, Factor stated that she assisted with the warden's duties, served as the public information officer for AOCI, and supervised four employees, including the Health and Safety Coordinator position formerly held by Myers. Factor authenticated a copy of defendant's position description for the Health and Safety Coordinator and she summarized in her own words what the position entails. Factor was asked about several of the things that plaintiff claims Myers did to harass her, which Factor identified as not being part of his job, for example, interacting with her on social media. Factor testified that whereas Myers was a full-time employee of defendant, contract employees like plaintiff are employed by a third party and work at AOCI under a contract. According to Factor, Myers did not supervise any employees and had no hiring or firing authority.

{¶8} Factor was familiar with plaintiff serving as the site coordinator for Sinclair Community College at AOCI, with an office in the education building. Factor testified that the education building had about six to eight people working in it on any given day and it was on the opposite side of the compound from the building where Myers' office was located. Myers would have had reason to be in the education building once a month to perform a compound-wide safety and sanitation inspection that he was required to complete, Factor stated, and if Myers noted any issues in one of his inspections, the issues would typically be addressed by the maintenance department. Factor testified that Myers did not need to contact plaintiff to schedule his monthly visits to the education building, nor was there any part of his job that required him to call her on any regular basis. When Myers would enter the education building, he was supposed to sign a

logbook maintained by corrections officers, Factor stated; when asked if Myers did so, Factor said she did not know.

{¶9} Factor acknowledged that in May 2019, Myers put in a written request to prison management for access to view AOCI's security camera system and his request was granted. (Defendant's Exhibit B.) Per the request, Myers was only granted access so that he could review accidents or other incidents occurring on the compound, and Factor testified that he was not supposed to use the cameras simply to watch employees, determine when they were arriving at work, or otherwise monitor the comings and goings of others. As far as Factor could recall, Myers had not previously had access or sought access to the security camera system.

{¶10} Factor's recollection was that after two individuals came forward with reports of inappropriate behavior by Myers, he was placed on administrative leave pending an investigation. Myers ultimately resigned his employment, Factor stated.

{¶11} There is no dispute that Myers was at all times relevant a state employee. "In accordance with R.C. 2743.02(F), the Court of Claims 'has exclusive jurisdiction to determine whether a state employee is immune from liability under R.C. 9.86.'" *Nix v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 13AP-547, 2014-Ohio-2902, ¶ 22, quoting *Johns v. Univ. of Cincinnati Med. Assocs.*, 101 Ohio St.3d 234, 2004-Ohio-824, 804 N.E.2d 19, syllabus.

{¶12} R.C. 9.86 states, in part:

{¶13} "Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶14} "[T]he question of scope of employment must turn on what the [employee's] duties are as a state employee and whether the [employee] was engaged in those duties at the time of an injury." *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, 857 N.E.2d 573, ¶ 23. "[T]he scope of employment is a fact-based inquiry that turns on proof of the employee's specific job description with the state and focuses on whether the employee's conduct is related to and promotes the state's interests." *Ries v. Ohio State Univ. Med. Ctr.*, 137 Ohio St.3d 151, 2013-Ohio-4545, 998 N.E.2d 461, ¶ 23.

{¶15} "An employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment. * * * The act must be so divergent that it severs the employer-employee relationship." *Elliott v. Ohio Dept. of Rehab. & Corr.*, 92 Ohio App.3d 772, 775, 637 N.E.2d 106 (10th Dist.1994). "The fact that the conduct constituting the tort was committed while the employee was on duty and supposedly performing services for his employer, does not render the employer liable where the employee deviated or departed from his employer's business to engage upon a matter for his own personal purposes without benefit to the employer." *Caruso v. State*, 136 Ohio App.3d 616, 621, 737 N.E.2d 563 (10th Dist.2000). "In other words, an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Byrd v. Faber*, 57 Ohio St.3d 56, 59, 565 N.E.2d 584 (1991).

{¶16} "If the Court of Claims determines that the employee's acts did not further the interests of the state, i.e., the employee was acting outside the scope of his employment, maliciously, in bad faith, or in a wanton or reckless manner, the state has not agreed to accept responsibility for the employee's acts and the employee is personally answerable for his acts in a court of common pleas." *Conley v. Shearer*, 64 Ohio St.3d 284, 287, 595 N.E.2d 862 (1992).

{¶17} "The determination as to whether or not a person is entitled to immunity under R.C. 2743.02(F) and 9.86 is a question of law." *Morway v. Ohio Bur. of Workers'*

*Comp.*, 10th Dist. Franklin No. 04AP-1323, 2005-Ohio-5701, ¶ 17.  "'While the issue of immunity is a question of law, consideration of the specific facts is necessary.'" *Webber v. Ohio Dept. of Pub. Safety*, 2017-Ohio-9199, 103 N.E.3d 283, ¶ 45 (10th Dist.), quoting *Marinucci v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 99AP-500, 2000 Ohio App. LEXIS 93 (Jan. 18, 2000).

{¶18} Upon review of the evidence presented, the magistrate finds that plaintiff's testimony credibly established that Myers engaged in a pattern of inappropriate conduct toward her including, but not limited to, excessive and unwanted personal attention and questioning, inappropriate comments about her body, invitations to engage in sex and requests for nude photographs, surveilling plaintiff, inappropriate touching, and sending plaintiff one or more photographs of his penis.  Such behavior on the part of Myers was associated with his own personal libidinal gratification and was plainly not part of his job duties and had no purpose of serving defendant's interest.  *See Oye v. Ohio State Univ.*, 10th Dist. Franklin No. 02AP-1362, 2003-Ohio-5944, ¶ 14; *Browder v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2021-00328JD, 2022-Ohio-3088, ¶ 8.

{¶19} Based on the foregoing, the magistrate finds that, at all times relevant, Kenneth Myers acted manifestly outside the scope of his employment.  Therefore, it is recommended that the court issue a determination that Myers is not entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas have jurisdiction over any civil actions that may be filed against him based upon the allegations of this case.

{¶20} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or*

*conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

ROBERT VAN SCHOYCK
Magistrate

**Filed September 21, 2022**
**Sent to S.C. Reporter 10/13/22**